COLGATE–PALMOLIVE COMPANY,
Appellee,

v.

Byron DORGAN as North Dakota State
Tax Commissioner, Appellant.

Civ. No. 9019.

Supreme Court of North Dakota.

Dec. 20, 1974.

Rehearing Denied Jan. 30, 1975.

B. Timothy Durick, Sp. Asst. Atty. Gen. for the North Dakota State Tax Commissioner, Bismarck, for appellant.

Pearce, Anderson, Pearce, Thames & Pearce, Bismarck, for appellee.

JOHNSON, Judge.

This case has its origin in a controversy concerning the Multistate Tax Compact. The Compact is an agreement among certain member states, approved by their respective legislatures, which provides a staff and administrative machinery to deal with common problems of taxation. A major area of concern is apportionment of income and other taxable transactions with respect to corporations doing business in a number of states. The most controversial aspect of the Compact is Article VIII which establishes arrangements for interstate audits by members of the staff of the Multistate Tax Commission, audits which may be made on behalf of several of the member states. The purpose is to avoid the necessity for individual audits by each of the states in which a corporation may be doing business. At the same time, a common source of information will be available to respective states from which to apportion income, sales and property of the corporation. Bills have been introduced to provide congressional approval of the Compact but none have been passed to date.[1]

It is the joint audit program which has aroused the ire of many corporations doing business on an interstate and international basis. As a result, a suit was commenced in the United States District Court for the Southern District of New York in August of 1972 to declare the Compact unconstitutional and invalid. Colgate-Palmolive Company is not a named plaintiff in that action but does claim to be part of the class on behalf of which the action has been brought. The New York case has apparently not yet been brought to trial. A preliminary motion for dismissal on behalf of the Multistate Tax Commission was denied by the federal district court. United States

---

1. See S. 3892, 89th Cong., 2d Sess. (1966); S. 883, S. 1551, H.R. 9476 and H.R. 13682, 90th Cong., 1st Sess. (1967); S. 1198, H.R. 6246 and H.R. 9873, 91st Cong., 1st Sess. (1969); S. 1883 and H.R. 6160, 92nd Cong., 1st Sess. (1971); S. 3333, 92nd Cong., 2d Sess. (1972).

Steel Corp. v. Multistate Tax Commission, 367 F.Supp. 107 (S.D.N.Y.1973).

Colgate filed corporate income tax returns with the North Dakota State Tax Commissioner for the years 1967 through 1970. By letter dated August 14, 1972, the Commissioner appointed the executive director and designated auditors of the Multistate Tax Commission to audit the records of Colgate for North Dakota income tax purposes. Colgate refused access to the Multistate Tax Commission auditors, contending that the Compact was constitutionally invalid. On September 18, 1972, the Commissioner issued notices of additional assessments of income tax for the years 1969 and 1970. These assessments were protested by Colgate on October 12, 1972, and a conference requested. On October 16, 1972, the Commissioner issued new additional assessments for each of the years 1967 through 1970. The new assessments were protested by Colgate and a hearing under the Administrative Agencies Practice Act was held in Bismarck on March 6, 1973.

At the time of the Commissioner's hearing the new assessments were introduced but Colgate was refused opportunity to cross-examine or present evidence on its behalf. The hearing examiner ruled that Colgate would not be allowed to present its case until it complied with the Commissioner's audit request. Colgate was given thirty days in which to comply or an order would be entered approving the assessments. Colgate appealed to the district court and obtained a Writ of Prohibition to prevent the Commissioner from proceeding further. The district court later ruled upon the appeal from the hearing examiner's decision that the Commissioner had denied Colgate its statutory and constitutional rights to a hearing, and should not proceed further until such a hearing had been granted.

## I.

■ Previous to reaching the merits of other issues presented, we must examine the Commissioner's contention that the decision or order in this matter is not an appealable order and not subject to review by either the district court or this court. There are many decisions and actions taken in the course of an administrative proceeding which are not subject to review by the courts. A proceeding might be delayed interminably if every ruling on evidence or procedure was the subject of an appeal to the district court. The hearing must proceed to some conclusion in order that the whole of the actions taken on the record accumulated may be reviewed in the course of an appeal. Matters must be ripe for review to avoid squandering judicial time and machinery on abstract or remote problems rather than those that are substantial and present. See 3 Davis, Administrative Law Treatise, Ch. 21.

The applicable statute for appeal from decisions of administrative agencies is Section 28–32–15, N.D.C.C., which provides, in part:

"Only final orders or decisions and orders or decisions substantially affecting the rights of parties are appealable. A procedural order made by an administrative agency during the pending of a hearing before it shall not be deemed a final order nor an order affecting a substantial right."

■ A ruling on admission of evidence during the course of a hearing would ordinarily be considered a procedural matter and not appealable. However, in this case the ruling of the hearing examiner foreclosed introduction of all evidence. The subsequent decision was a foregone conclusion unless Colgate complied. We do not construe the law to require the performance of idle gestures. While some restraint must be exercised to prevent expansion of the categories of actions which may be appealed, the order here substantially affected the rights of one of the parties and was final within the contemplation of the statute. See also, Langer v. Gray, 73 N.D. 437, 15 N.W.2d 732 (1944).

## II.

Counsel have submitted extensive briefs on a number of different issues related to this case. It does not appear that all of these issues are necessary to resolution of this appeal. One essential question relates to the manner of handling the hearing before the Commissioner. While we may be sympathetic to the problems of auditing a large international corporation with limited audit resources, we cannot approve this method of enforcing audit requests.

 It is unnecessary to reach the constitutional objections to the hearing examiner's order as there is adequate basis to reverse it on statutory grounds. In reviewing the sometimes erratic standards applied to administrative hearings, a leading authority had this observation:

"The true principle is that a party who has a sufficient interest or right at stake in a determination of governmental action should be entitled to an opportunity to know and to meet, with the weapons of rebuttal evidence, cross-examination, and argument, unfavorable evidence of adjudicative facts, except in the rare circumstance when some other interest, such as national security, justifies an overriding of the interest in fair hearing." 1 Davis, Administrative Law Treatise, § 7.02, at 412.

There is ample statutory authority that the taxpayer should be allowed to cross-examine and submit rebuttal evidence in a hearing of this type. Under Section 57–38–39, N.D.C.C., at such a hearing, "evidence may be offered to support such additional tax or prove that it is not due." Section 57–01–11, N.D.C.C., provides for a right of hearing and a right of appeal. Under the Administrative Agencies Practice Act, at such a hearing, "the person against whom the proceedings have been instituted shall be afforded the same opportunity to present evidence and to examine and cross-examine witnesses as is permitted to parties in an action in the district court." Section 28–32–05(2), N.D.C.C.

 The Commissioner argues that even with the statutory requirements the hearing examiner's action may be justified under the "adverse inference" rule. Essentially, this rule of evidence provides that nonproduction of relevant evidence in the control of a party permits an inference that the evidence is unfavorable to that party's cause. Vol. II, Wigmore on Evidence, 3rd Ed., § 285. The rule is as much a matter of common sense and ordinary judgment as a rule of law. It has received recognition by this court. See Krueger v. North American Creameries, 75 N.D. 264, 27 N.W.2d 240 (1947). However, we have found no authority which would carry this rule to the limits urged by the Commissioner. The strongest apparent application is in a National Labor Relations Board case argued before the Circuit Court of Appeals for the District of Columbia. International Union (UAW) v. N.L.R.B., 148 U.S.App.D.C. 305, 459 F.2d 1329 (1972). In that case an employer refused to produce certain records relating to an unfair labor practice complaint, even though they were subpoenaed by the general counsel of the NLRB. The circuit court held that the NLRB should apply the adverse inference rule to find against the employer, unless the evidence was produced. A dissenting judge argued that this was merely a permissible inference which the NLRB need not apply. Even in that case, Judge Wright noted certain limitations which are applicable here:

"The best evidence requirement is an exclusionary rule which suppresses weak evidence in situations where nonproduction of best evidence is unexplained. In contrast, the adverse inference rule excludes no evidence." International Union (UAW) v. N.L.R.B., 459 F.2d 1329, 1339.

In this case the Commissioner would apply the rule to exclude all evidence by the taxpayer.

The *UAW* case also involved the refusal to comply with a subpoena. While the Commissioner would have subpoena powers

under the Administrative Agencies Practice Act (see Section 28–32–09, N.D.C.C.), there is no record of a subpoena in this matter.

■ The Commissioner argues that in an administrative hearing his hearing examiner should have powers comparable to those granted a judge under the North Dakota Rules of Civil Procedure. Rule 37 authorizes a judge to take appropriate action up to and including dismissal of a complaint or striking of a defense upon failure of a party to comply with discovery properly requested by the opposing party. There appears no authority for transplanting the Rules of Civil Procedure into administrative proceedings. Granting an administrative agency, with prosecutory and adjudicative functions, powers coextensive with the courts would raise serious constitutional questions.

The Commissioner concedes the "arbitrary" character of the additional assessments made. The basis for such assessments was not established at the hearing and we would be asked to approve findings of additional tax due without the introduction of evidence to establish the validity of the assessments. The Administrative Agencies Practice Act does not contemplate the Commissioner lifting himself by his own bootstraps in this fashion.

### III.

■ Certain additional matters raised in the course of this appeal are deserving of comment for the proceedings on remand. We have not reached the constitutional issues surrounding the Multistate Tax Compact. Colgate has urged that such issues are not properly before this court and should be resolved in the separate federal court action. Since these questions are not essential to our decision in this case and since they were not litigated below, they have not been decided by this court. However, there is precedent for agreements among the states, without approval of Congress, where the agreement is not directed to "the increase of political power in the states, which may encroach upon or interfere with the just supremacy of the United States. * * *" Virginia v. Tennessee, 148 U.S. 503, 519, 13 S.Ct. 728, 734, 37 L.Ed. 537 (1893); Dixie Wholesale Grocery Co. v. Martin, 278 Ky. 705, 129 S.W.2d 181 (1939); Roberts Tobacco Co. v. Michigan Department of Revenue, 322 Mich. 519, 34 N.W.2d 54 (1948); McHenry County v. Brady, 37 N.D. 59, 163 N.W. 540 (1917). The Compact has been duly adopted by the Legislative Assembly of the State of North Dakota and must be considered as valid unless and until declared in violation of the federal or state constitution by a court of appropriate jurisdiction.

A second related question concerns the Tax Commissioner's authority to appoint employees of the Multistate Tax Commission as auditors for North Dakota tax purposes. Separate from the authority granted under the Multistate Tax Compact, the Commissioner has statutory authority to require an audit by "*any* agent or representative designated by him for that purpose, * * *" [Emphasis supplied.] Section 57–38–56, N.D.C.C. If Colgate desires that the results of that audit not be made available to other states it may seek a protective order from a court with proper jurisdiction. Since the State of North Dakota is supplying financial support to the Commission, it should be entitled to whatever services the Commission can provide without jeopardizing the pending constitutional litigation.

The purposes of the Compact are laudable in attempting to provide uniformity and cooperation among the states with respect to common problems of taxation. Congress has struggled with the problems of state taxation of interstate business operations. To date, congressional action has apparently resulted only in a moratorium with respect to state "doing business" taxes upon out-of-state financial institutions. See State Taxation of Depositories Act, Public Law 93–100, § 7, Aug. 16, 1973, 87 Stat. 347 (1973). See also, Legislative History P.L. 93-100, U.S.Code Congressional and Administrative News, 93rd Cong., 1st Sess., pp.

2014, 2019 (1973). The Compact has gained strength as a means of enabling the states to resolve these problems without federal participation. Unfortunately, it may require a decision of the United States Supreme Court to finally determine the constitutional validity of these efforts.

The judgment of the district court is affirmed, subject to modification of such of its conclusions of law as may be inconsistent with this opinion. The case is remanded for further proceedings before the State Tax Commissioner.

ERICKSTAD, C. J., and PAULSON, KNUDSON and VOGEL, JJ., concur.